1

2

3

4

5                    UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF WASHINGTON

6
   RALPH N. DAVIS,                 )
7                                  ) No. CV-09-191-CI
            Plaintiff,             )
8                                  ) ORDER DENYING PLAINTIFF'S
   v.                              ) MOTION FOR SUMMARY JUDGMENT
9                                  ) AND GRANTING DEFENDANT'S
   MICHAEL J. ASTRUE,              ) MOTION FOR SUMMARY JUDGMENT
10 Commissioner of Social          )
   Security,                       )
11                                 )
            Defendant.             )
12 _____)

13      BEFORE THE COURT are cross-Motions for Summary Judgment. (Ct.

14 Rec. 12, 14.)  Attorney Maureen J. Rosette represents Plaintiff;

15 Special Assistant United States Attorney Willy M. Le represents

16 Defendant.    The parties have consented to proceed before a

17 magistrate judge. (Ct. Rec. 8.) After reviewing the administrative

18 record and the briefs filed by the parties, the court **DENIES**

19 Plaintiff's Motion for Summary Judgment and directs entry of

20 judgment for Defendant.

21      Plaintiff Ralph Davis (Plaintiff) protectively filed for

22 disability insurance benefits (DIB) and Supplemental Security Income

23 (SSI) on June 21, 2005.[1]  (Tr. 114.)  He alleges onset of disability

24 _____

25      [1]  The record shows Plaintiff's prior claim for DIB was denied

26 on March 16, 2004. (Tr. 115.)  It does not appear Plaintiff appealed

27 this denial.   The ALJ declined to reopen this claim, (Tr. 18),

28 therefore the finding of not-disabled through March 16, 2004, is

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 1

on March 14, 2000, due to "back injury, depression, mental." (Tr. 118.)  Plaintiff's date of last insured for DIB purposes was March 31, 2002.  (Tr. 18, 114.)

Following a denial of benefits at the initial stage and on reconsideration, a hearing was held before Administrative Law Judge (ALJ) Richard Say on April 4, 2007.  (Tr. 425-49.)  Plaintiff, who was represented by counsel; medical expert Joseph Cools, Ph.D.; and vocational expert Deborah N. Lapoint, appeared and testified. (*Id.*) On March 30, 2007, ALJ Say denied benefits.  (Tr. 18-27.) The Appeals Council denied Plaintiff's request for review.  (Tr. 5-7.) This appeal followed.  Jurisdiction is appropriate pursuant to 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

In *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), the court set out the standard of review:

> The decision of the Commissioner may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id.* at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin.* 169 F.3d 595, 599 (9th Cir. 1999).
>
> The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th

final and binding.  *See* 20 C.F.R. §§ 404.900(b), .987.  Refusal by Commissioner to reopen an administratively final decision is not subject to judicial review.  42 U.S.C. § 405(g).

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 2

Cir. 1995).  The ALJ's determinations of law are reviewed *de novo*, although deference is owed to a reasonable construction of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).

It is the role of the trier of fact, not this court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400.  If evidence supports more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).  Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).  If there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or non-disability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## SEQUENTIAL PROCESS

Also in *Edlund*, 253 F.3d at 1156-1157, the court set out the requirements necessary to establish disability:

> Under the Social Security Act, individuals who are "under a disability" are eligible to receive benefits. 42 U.S.C. § 423(a)(1)(D). A "disability" is defined as "any medically determinable physical or mental impairment" which prevents one from engaging "in any substantial gainful activity" and is expected to result in death or last "for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Such an impairment must result from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). The Act also provides that a claimant will be eligible for benefits only if his impairments "are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 3

kind of substantial gainful work which exists in the national economy . . . " 42 U.S.C. § 423(d)(2)(A). Thus, the definition of disability consists of both medical and vocational components.

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). This burden is met once a claimant establishes that a physical or mental impairment prevents him from engaging in him previous occupation. 20 C.F.R. §§ 404.1520(a)(4)(i-iv), 416.920(a)(4)(i-iv). At step five, the burden shifts to the Commissioner to show that (1) the claimant can perform other substantial gainful activity; and (2) a "significant number of jobs exist in the national economy" which claimant can perform. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

**STATEMENT OF FACTS**

The facts of the case are set forth in detail in the transcript of proceedings, and are summarized briefly here. Plaintiff was 45 years old at the time of the administrative hearing. He has a high school education and two years of college, with a degree in Retail Sales. He also is certified to drive a truck. (Tr. 125, 436.) He testified he was living with his 19 year old son who is attending college. (Tr. 437.) He stated his son helps him with personal care, household chores, and cooking. (Tr. 439-41.) Plaintiff has past work experience as a wood grader, a cabinet assembler, a rug

installer for a boat manufacturer, a janitor, a truck driver, and a cook.  (Tr. 126, 444-45.)  Plaintiff testified he was limited to lifting 15 pounds at a time, sitting in one position for 30 minutes to an hour and a half, standing for about 45 minutes to an hour.  He also testified he was limited to walking about six blocks at a time. (Tr. 441-42.)

## ADMINISTRATIVE DECISION

The ALJ found Plaintiff had not engaged in substantial gainful activity since March 14, 2000, alleged onset date.  (Tr. 20.) At step two, he found Plaintiff has medically determinable impairments of "major depressive disorder, personality disorder, somatoform disorder, and degenerative disc disease post back surgery."  (Tr. 21.)  He found non-severe impairments of mitral valve prolapse, left shoulder pain, and lesion on Plaintiff's left larynx.  (*Id*.)  At step three, the ALJ found Plaintiff's impairments alone and in combination did not meet or medically equal a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listings).  (*Id.*)  Citing affirmative evidence of symptom exaggeration and malingering, the ALJ found Plaintiff's allegations of disabling symptoms were not entirely credible.  (Tr. 23-25.)  At step four, the ALJ determined Plaintiff had the residual functional capacity (RFC) to perform light work and sedentary work with the following limitations:

> The claimant would find it necessary to change positions every 45 minutes to an hour.  The clamant can occasionally stoop, crouch, crawl, kneel, or balance.  He can occasionally climb ramps or stairs, but should never climb ladders, ropes, or scaffolds.  The claimant should avoid heights and moving machinery.  The claimant has good use of his arms and hands for repetitive grasping, holding and turning objects.  The claimant is also capable of performing sedentary work.  With respect to functional limitations, the clamant can understand, remember and carry out short simple instructions.  He should not be

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 5

1    placed in a work setting where he would be required to
     interact with the general public.   The clamant can have
2    superficial contact with supervisors and coworkers.

3    (Tr. 22.)   Based in part on VE testimony, the ALJ concluded

4    Plaintiff could still perform his past relevant work as a cabinet

5    assembler and was, therefore, not disabled as defined by the Social

6    Security Act from March 14, 2000, through the date of his decision.

7    (Tr. 22-27.)

8                              **ISSUES**

9         The question presented is whether there is substantial evidence

10   to support the ALJ's decision denying benefits and, if so, whether

11   that decision is based on proper legal standards.   Plaintiff

12   contends the ALJ erred when he (1) rejected examining medical source

13   opinions, (2) rejected the medical expert testimony, (3) failed to

14   include all of his non-exertional limitations in the hypothetical

15   individual presented to the VE at step four, and (4) erroneously

16   relied on the VE testimony.   (Ct. Rec. 13 at 14-18.)

17                           **DISCUSSION**

18   **A.   Credibility**

19        As stated by the Ninth Circuit:

20        An ALJ cannot be required to believe every allegation of
          disabling pain, or else disability benefits would be
21        available for the asking, a result plainly contrary to 42
          U.S.C. § 423 (d)(5)(A). . . .   This holds true even where
22        the claimant introduces medical evidence showing that he
          has an ailment reasonably expected to produce <u>some</u> pain;
23        many medical conditions produce pain not severe enough to
          preclude gainful employment.
24

25   *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).   In deciding

26   whether to admit a claimant's subjective symptom testimony, the ALJ

27   must engage in a two-step analysis.   *Smolen v. Chater*, 80 F.3d 1273,

28   1281 (9th Cir. 1996).   Under the first step, the claimant must

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 6

produce objective medical evidence of underlying "impairment," and must show that the impairment, or a combination of impairments, "could reasonably be expected to produce pain or other symptoms." *See Cotton v. Bowen*, 799 F.2d 1403, 1407 (9th Cir. 1986)(*overruled on other grounds*). If this test is satisfied, the ALJ may reject a claimant's testimony if he finds affirmative evidence of malingering. *Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003). If malingering is established, the adjudicator is not bound by the "clear and convincing standard" articulated in *Lester v. Chater,* 81 F.3d 821, 834 (9th Cir. 1995) (without affirmative evidence of malingering, a claimant's testimony may be rejected only with specific "clear and convincing" reasons). *See, e.g., Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). Determination of credibility is a function solely of the Commissioner. *Fair,* 885 F.2d at 604.

The record on review is replete with affirmative evidence of malingering and exaggeration of symptoms by Plaintiff. As found by the ALJ, the record also shows that psychological evaluators and treating medical professionals consistently expressed concern that due to Plaintiff's exaggeration and inconsistencies in reporting, accurate diagnoses and assessment of physical and limitations were difficult to make and/or confirm. (Tr. 171, 178, 182, 214, 280, 282, 284, 375, 394.) The ALJ's credibility determination is supported by specific findings supported by substantial evidence and has not been challenged.

**B.   Evaluation of the Medical Evidence**

Plaintiff argues the ALJ failed to credit opinions of accepted medical sources who opined his mental impairments cause marked

limitations in social and cognitive functioning that would preclude work. Specifically, Plaintiff contends the ALJ did not give legally sufficient reasons for rejecting the opinions of treating psychologist John Arnold, Ph.D., examining psychologists John McRae, Ph.D., and Pamela Ridgway, Ph.D., and medical expert Joseph Cools, Ph.D. (Ct. Rec. 13 at 15-17.) He also argues the medical expert's testimony should be credited because it is consistent with limitations opined by Dr. Ridgeway "despite symptom exaggeration." (*Id.* at 18.) Plaintiff argues the medical evidence, despite evidence of malingering, supports a finding of disability.

In evaluating a disability claim, the adjudicator must consider all medical evidence provided. A treating or examining physician's opinion is given more weight than that of a non-examining physician. *Benecke v. Barnhart,* 379 F.3d 587, 592 (9th Cir. 2004). If the treating physician's opinions are not contradicted, they can be rejected by the decision-maker only with "clear and convincing" reasons. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If contradicted, the ALJ may reject the opinion with specific, legitimate reasons that are supported by substantial evidence. *Lester,* 81 F.3d at 830-31; *Flaten v. Secretary of Health and Human Serv.*, 44 F.3d 1453, 1463 (9th Cir. 1995). In addition to medical reports in the record, the testimony of a non-examining medical expert selected by the ALJ may be helpful in his adjudication. *Andrews,* 53 F.3d at 1041; *Magallanes v. Bowen,* 881 F.2d 747, 753 (9th Cir. 1989). Testimony of a medical expert may serve as substantial evidence when supported by other evidence in the record. *Id.* However, final resolution of conflicts in the medical evidence is the sole responsibility of the ALJ. *Andrews*, 53 F.3d at 1039.

1    Historically, the courts have recognized conflicting medical
2    evidence, the absence of regular medical treatment during the
3    alleged period of disability, and the lack of medical support for
4    doctors' reports based substantially on a claimant's subjective
5    complaints of pain as specific, legitimate reasons for disregarding
6    the treating physician's opinion. *Flaten*, 44 F.3d at 1463-64; *Fair*,
7    885 F.2d at 604.  The ALJ need not accept a treating source opinion
8    that is "brief, conclusory and inadequately supported by clinical
9    finding." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1044-45 (*citing*
10   *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002)).  Where an ALJ
11   determines a treating or examining physician's stated opinion is
12   materially inconsistent with the physician's own treatment notes,
13   legitimate grounds exist for considering the purpose for which the
14   doctor's report was obtained and for rejecting the inconsistent,
15   unsupported opinion. *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir.
16   1996.)  Rejection of an examining medical source opinion is specific
17   and legitimate where the medical source's opinion is not supported
18   by his own medical records and/or objective data.  *Tommasetti v.*
19   *Astrue*, 533 F.3d 1035, 1041(9th Cir. 2008)(rejection of opinion which
20   is a reiteration of claimant's own unreliable statements is specific
21   and legitimate).

22       In addition to accepted medical source opinions, the ALJ is
23   required to consider observations by "other sources," *i.e.,* nurse
24   practitioners, physician's assistants, mental health therapists, and
25   social workers, as to how an impairment affects a claimant's ability
26   to work.  20 C.F.R. §§ 404.1513(d), 416.913(d); *Sprague*, 812 F.2d at
27   1232.  Although, under the Regulations, other sources cannot
28   establish a medically determinable impairment, the Commissioner has

ruled that weight given to their opinions must be evaluated on the basis of certain factors, *e.g.,* their professional qualifications, how consistent their opinions are with the other evidence, the amount of evidence provided in support of their opinions, whether the other source opinion is well-explained, and whether the other source "has a specialty or area of expertise related to the individual's impairment." *Social Security Ruling* (*SSR*) 06-03p.  An adjudicator may consider these factors in giving the non-medical treatment provider's opinion more weight than that of an acceptable medical source.  *Id.*  A full explanation of the weight given an other source opinion must be included in the ALJ's decision when the other source is given greater weight than a treating source opinion. *Id.*

        **1.    Treating psychologist: John Arnold, Ph.D.**

        The record indicates Dr. Arnold provided mental health treatment to Plaintiff through Community Health Association of Spokane (CHAS) from June 2004 through December 2005.  (Tr. 24.)  As found by the ALJ, Dr. Arnold completed an agency evaluation in December 2004, in which he diagnosed several mental disorders and indicated marked cognitive and social functional limitations in exercising judgment, relating appropriately to co-workers and supervisors and ability to tolerate the pressure of a normal work setting. (Tr. 309-11.)  It appears the 2004 evaluation is based on clinic notes from four sessions (June to November) which record Plaintiff's subjective complaints and Dr. Arnold's observations. (Tr. 304-08.)  In 2007, Dr. Arnold completed a psychological evaluation based on an interview, mental status exam and objective testing (MMPI-2.)  (Tr. 388-90.)  Dr. Arnold noted objective test

results were of questionable validity due to over-reporting by Plaintiff. (Tr. 389.) However, he diagnosed depression, NOS, undifferentiated somatoform disorder, problematic gambling, rule out malingering, and personality disorder with schizotypal and borderline features. (Tr. 390.) In the accompanying agency evaluation form (Tr. 25, 385-87), Dr. Arnold noted mild to moderate functional limitations that would last three months.

The ALJ credited Dr. Arnold's opinions regarding diagnoses when he found Plaintiff had the severe impairments of major depressive disorder, personality disorder, and somatoform disorder. (Tr. 21, 24.) In his discussion of Dr. Arnold's other opinions, the ALJ found that, although Dr. Arnold did not specifically diagnose malingering, he expressed concerns of secondary gain and exaggerated symptoms with other medical providers at CHAS. (Tr. 24, 280, 282.) He also found the 2004 marked limitations were inconsistent with the record as a whole, and gave more weight to Dr. Arnold's 2007 narrative report and assessed limitations. (Tr. 22, 24.) The ALJ's reasoning is specific, legitimate, and supported by the record in its entirety.[2] Further, it is reasonable that the ALJ gave less

---

[2] The record shows the medical opinions relied upon by Plaintiff are contradicted; therefore, the "specific and legitimate" standard applies. *Lester*, 81 F.3d at 831. For example, in 2005, reviewing psychologist Gerry Gardner, Ph.D. opined Plaintiff had no severe mental impairments (Tr. 195), and examining psychiatrist Robert Baxley, M.D., opined Plaintiff was fixed and stable from a psychiatric perspective and fully employable "if he so chose to work." (Tr. 181.)

weight to Dr. Arnold's 2004 assessment of limitations (which is brief, unexplained, and based exclusively on Plaintiff's self-report) than the 2007 evaluation, which included a formal mental status exam and objective testing. *Tommasetti*, 533 F.3d at 1041. The ALJ properly considered Dr. Arnold's reports and gave weight to those opinions supported by substantial evidence.

**2.    Examining Psychologists: John McRae, Ph.D. and Pamela Ridgway, Ph.D.[3]**

Drs. McRae and Ridgway examined Plaintiff in 2005 and 2007, respectively. (Tr. 372-83, 391-402.) Both psychologists prepared a narrative report and completed a checkbox form assessing several cognitive and social functioning limitations. The ALJ rejected the findings of moderate and marked limitations in the checkbox forms because they were inconsistent with the narrative reports in which the psychologists described Plaintiff's exaggeration of symptoms. As found by the ALJ, both psychologists considered Plaintiff to be malingering. (Tr. 25.) Specifically, the ALJ noted Dr. McRae's conclusion that, due to Plaintiff's exaggeration and dramatic behavior, he did not have sufficient information to determine "how

-----

[3] Although the ALJ briefly discussed and gave little weight to examining psychologist Dr. Gary Lauby's psychological evaluation dated August 11, 2003, (Tr. 27, 157-60), this evidence is not relevant to Plaintiff's current application. As found by the ALJ, Plaintiff's prior claims were not re-opened and the previous determination of not-disabled through March 16, 2004, is final and binding. (Tr. 18.) Therefore, the relevant period at issue in these proceedings begins March 17, 2004.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 12

limiting the claimant's mood and personality disorders might be."[4]
(Tr. 378-79.)   Thus, the ALJ found by Dr. McRae's own admission, he
could not make a valid determination of Plaintiff's limitations.
(Tr. 25.)   This is a specific and legitimate reason to disregard a
medical opinion.  *Tommasetti*, 533 F.3d at 1041; *Crane v. Shalala*, 76
F.3d 251, 254 (9th Cir. 1996).  As a result, the ALJ gave little
weight to limitations indicated on Dr. McRae's check box evaluation.
(Tr. 25.)

     Likewise, the ALJ rejected moderate and marked limitations
assessed by Dr. Ridgway on her Medical Source Statement (MSS).  [5]

_____

     [4] It is noted on independent review that Dr. McRae suggested
the opinions of treating providers might provide a more valid
indication of Plaintiff's ability to function.  (Tr. 378.)  As found
by the ALJ, Plaintiff's treating nurses and physicians' assistants
noted his inconsistent statements and exaggerated behavior on exam.
Based on their treatment relationship with Plaintiff, these medical
providers concluded his condition was fixed and stable, and he was
capable of work without limitations.  (Tr. 24, 217-299, 252.)
Referencing specific findings in the record, the ALJ properly gave
these "other source" opinions significant consideration.  20 C.F.R.
§§ 404.1513(d), 416.913(d); *SSR* 06-03p (weight given to treating
health care provider opinions must be evaluated on the basis of the
sources' qualifications, their treatment relationship, how
consistent their opinions are with the other evidence, and the
amount of evidence provided in support of their opinions).

     [5] Although the ALJ found Dr. Ridgway "indicated several
moderate and severe limitation" (Tr. 26), a review of the report

(Tr. 26.)  As explanation of these functional limitations, Dr. Ridgway referred the reader to her narrative report.  (Tr. 401, 402.)  The narrative report shows Dr. Ridgway was quite clear as to Plaintiff's malingering.  "Current findings also indicate that he produced results consistent with malingering during objective psychological testing, and virtually all of claimant's mental health providers and/or evaluators have noted his dramatic and exaggerated presentation."  (Tr. 397.)  She then opined that "it is not entirely possible to rule out the possibility that Mr. Davis may exhibit some degree of legitimate psychological personality disorder," that had been characterized as numerous mental disorders throughout the record. (Tr. 397.)  Based on her evaluation, Dr. Ridgway diagnosed pain disorder associated with psychological and medical factors, dysthymic disorder, malingering, and personality disorder, NOS "with borderline and negativistic features."  (*Id.*)

    The ALJ first noted that Dr. Ridgway considered Plaintiff to be malingering.  (Tr. 25, 397.) He then found Dr. Ridgway's assessed limitations in the MSS were consistent with Plaintiff's exaggerated complaints.  (Tr. 25-26.)   While the ALJ did not use the words "I reject Dr. Ridgway's MSS findings," the court can read the ALJ's summary of the evidence and draw reasonable inferences. *Magallanes*, 881 F.2d at 755.   As discussed above, the ALJ properly found evidence of malingering and discounted Plaintiff's allegations; therefore it is a reasonable inference that the ALJ discounted Dr. Ridgway's opinions that reflect Plaintiff's self-reported, rejected

shows limitations assessed were "moderate" and "marked."  (Tr. 399-401.)

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 14

1  limitations.  *Tommasetti*, 533 F.3d at 1041.  ALJ Say also found

2  "moderate and severe" limitations assessed by Dr. Ridgway were not

3  consistent with the objective test results or the 2007 opinions

4  rendered by Plaintiff's treating psychologist, Dr. Arnold.  (Tr.

5  26.)  These are specific and legitimate reasons to reject the

6  limitations identified by the ALJ.

7       Regarding her opinion the claimant's prognosis for maintaining

8  employment "was quite poor," the ALJ is not obliged to accept this

9  opinion as controlling.  *Richardson,* 402 U.S. at 400; *Andrews*, 53

10  F.3d at 1039; *SSR* 96-8p.  As discussed below, the ALJ properly

11  considered all the evidence in the record, resolved the medical

12  conflicts and issue of credibility to arrive at his RFC and

13  disability determinations.

14       In summary, the ALJ gave legally sufficient reasons for

15  rejecting the examining psychologists' moderate and marked

16  functional limitations included on the check box form evaluations.

17  His reasoning is supported not only by the clear evidence of

18  malingering, but also by inconsistencies between the psychologists'

19  narratives and conclusions regarding limitations, and their

20  observations of inconsistencies between Plaintiff's behavior, self-

21  report and test results.  *Fair*, 885 F.2d at 604.

22       **3.   Non-examining Medical Expert: Joseph Cools, Ph.D.**

23       Plaintiff asserts the ALJ was obliged to accept the medical

24  expert's opinions because they were based on a review of the record

25  in its entirety.  (Ct. Rec. 13 at 18.)  However,  the decision to

26  call a medical expert for opinions on the nature and severity of

27  impairments is within the discretion of the ALJ.  Further, in

28  discharging his responsibility for resolving conflicts among medical

opinions, the ALJ may reject a medical expert's opinion if it is inconsistent with the record as a whole. *Finch v. Astrue*, 547 F.3d 933, 936 (8th Cir. 2008).

Here, Dr. Cools testified that, based on his review of the record, it was clear Plaintiff was malingering, but he advised against ignoring the fact that Plaintiff exhibited symptoms of a personality disorder and depression. (Tr. 431.) He opined Plaintiff had several marked functional limitations that would preclude him from "surviving in a work like setting." (Tr. 432.) As noted by the ALJ, Dr. Cools cited Plaintiff's self-reported psychiatric hospitalizations as a child, problems relating with other people and suicide ideation as support for his opinions. (Tr. 432.) However, the ALJ properly found there is no evidence (other than Plaintiff's unreliable self report) to support these allegations. (Tr. 26.)

The ALJ gave Dr. Cools' opinions regarding the marked and moderate limitations in functioning little weight because Dr. Cools appeared to accept at face value the exaggerated symptoms, the claim of suicide gesture, and psychiatric problems as a youth claimed by Plaintiff, even though recent psychological testing confirmed malingering. (*Id.*) The ALJ's reasoning for rejecting Dr. Cools' functional assessment also is supported by the hearing transcript, which shows that Dr. Cools testified, "The claimant is so focused on wanting to get disability that he has no interest in working." (Tr. 432.)

The ALJ properly explained the weight given to Dr. Cools' opinions regarding Plaintiff's extreme functional limitations. Nonetheless, ALJ Say accepted Dr. Cools' diagnoses of personality

disorder and major depressive disorder.  (Tr. 21, 431.)  Further, consistent with Dr. Cools' testimony that Plaintiff had limitations in his ability to understand or remember detailed complex instructions and relate to other people, including co-workers, supervisors or the general public, (Tr. 434-35), the ALJ found Plaintiff was limited to work involving short, simple instructions, to work settings where he would not have to interact with the general public, and could have only superficial contact with supervisors and co-workers.  (*Id.*, Tr. 22, 433. )

As found by the Ninth Circuit, "A physician's opinion of disability 'premised to a large extent upon the claimant's own accounts of his symptoms and limitations' may be disregarded where those complaints have been 'properly discounted.'" *Morgan*, 169 F.3d at 602. (Citations omitted.) Because the ALJ clearly identified significant affirmative evidence of malingering, the ALJ properly discounted Plaintiff's complaints.  He did not err in discounting those medical opinions based on Plaintiff's self-reported limitations.  Because the resolution of conflicts in the medical evidence is the sole province of the Commissioner, these findings, which are supported by substantial evidence, may not be disturbed.

C.   RFC Determination

Although Plaintiff believes he is more limited than the ALJ found, the question before the reviewing court is not whether the record supports Plaintiff's belief, but whether there is substantial evidence to support the ALJ's finding that Plaintiff can still work, and whether the decision is free of legal error.  *Tackett*, 180 F.3d at 1097.  The RFC determination represents the most a claimant can still do despite his physical and mental limitations.  20 C.F.R. §§

404.1545, 416.945.   The RFC assessment is not a "medical issue" under the Regulations; it is based on all relevant evidence in the record, not just medical evidence.  *Id.; SSR* 96-5p.  As discussed above, the ALJ's rejection of exaggerated and disabling limitations reported by Plaintiff to the various medical examiners is supported by significant evidence of malingering.   The ALJ's RFC assessment reflects thoughtful consideration of medical opinions in the entire record and represents a rational interpretation of that evidence in light of the affirmative evidence of malingering.  Therefore, the court may not substitute its judgment for that of the Commissioner.

Because the ALJ properly discounted Dr. Cools' opinions regarding disabling limitations, the ALJ was not obliged to include those limitations in the hypothetical question.   The record shows the hypothetical individual presented to the VE reflects the affirmed RFC (Tr. 446-47); therefore, the ALJ properly relied on the VE's testimony.  *Embrey v. Bowen,* 849 F.2d 418, 422-23 (9th Cir. 1988).  Accordingly,

**IT IS ORDERED**:

1.   Plaintiff's Motion for Summary Judgment **(Ct. Rec. 12)** is **DENIED.**

2.   Defendant's Motion for Summary Judgment dismissal **(Ct. Rec. 14)** is **GRANTED.**

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant.   The file shall be **CLOSED** and judgment entered for **DEFENDANT.**

DATED August 4, 2010.

S/ CYNTHIA IMBROGNO
UNITED STATES MAGISTRATE JUDGE

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 18